UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| CAROLYN MINCEY, and QUENTINA SONNIER<br><br>Plaintiffs,<br><br>v.<br><br>RYAN VARDMAN, individually, and PIEDMONT HEALTHCARE, INC.,<br><br>Defendants. | Civil Action File No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1. Plaintiffs Carolyn Mincey and Quentina Sonnier were visiting a loved one at Piedmont Columbus Regional Northside Campus when uniformed Columbus Police Department officer Ryan Vardman, who was working for Defendant Piedmont Healthcare, Inc., approached them and demanded that they leave.

2. Plaintiffs had done nothing to call attention to themselves.

3. Either Vardman had picked out Plaintiffs for harassment at random or he had confused Plaintiffs for another party at the hospital.

4. Regardless, Plaintiffs realized that there was no reasoning with Vardman, so they agreed to leave the hospital.

5. As they left, Mincey called Vardman racist. In retaliation for this comment, Vardman arrested Mincey.

6. When Sonnier criticized Vardman for this conduct, Vardman arrested her, too.

7. Both Plaintiffs were charged with felonies that threatened their livelihood and their liberty.

8. At trial, a jury found Vardman's testimony not credible and acquitted Sonnier and Mincey of all charges.

## JURISDICTION AND VENUE

9. This is a civil and constitutional rights action arising under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction of federal claims under 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction of pendent state law claims under 28 U.S.C. § 1337.

10. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims arose in this district and division.

## PARTIES

11. Plaintiff Carolyn Mincey is a United States citizen.

12. Plaintiff Quentina Sonnier is a United States citizen.

13. Defendant Ryan Vardman is sued in his individual capacity.

14. At all times relevant to this complaint, Vardman acted under the color of law by virtue of his uniformed presence as a Columbus Police Department officer.

15. At all times relevant to this complaint, Vardman acted within the scope and authority of his employment for the Columbus Police Department and Defendant Piedmont Healthcare, Inc.

16. Defendant Piedmont Healthcare, Inc. is a Georgia corporation subject to suit. Piedmont is liable under state law *respondeat superior* for Vardman's tortious conduct.

## FACTS

17. Carolyn Mincey is Quentina Sonnier's mother.

18. Mother and daughter were at Piedmont Columbus Regional Northside Campus while a loved one was receiving evaluation and treatment in the Emergency Department.

19. At the time, Vardman was working for Piedmont in the Emergency Department waiting area as a uniformed off duty officer providing security.

20. Also at the time Mincey, Sonnier, and Vardman were in the Emergency Department waiting area, a Piedmont staff member at the front desk had an innocuous exchange with another person in the waiting area.

21. The innocuous exchange involved nothing more than the other person stating words to the effect of "If she doesn't like this job, she could find another" in regard to the Piedmont staff member who was fielding questions at the front desk of the Emergency Department waiting area.

22. At the time that the Piedmont staff member at the front desk had the innocuous exchange, Mincey and Sonnier were in a different area of the waiting area.

23. Vardman approached the person involved in the innocuous exchange and warned him that if he continued his behavior, he would be asked to leave.

24. After a brief passage of time, Vardman then came up to Mincey and told her that she had to leave the hospital and that she had been warned.

25. The only apparent characteristics that Mincey shared with the man involved in the innocuous exchange was that they were both African American.

26. One major distinguishing feature between Mincey, on the one hand, and the man involved in the innocuous exchange, on the other hand, was that Mincey was holding a small child in her arms.

27. Another major distinguishing feature was that the person in the minor verbal argument was male, while Mincey is female.

28. Although it was readily obvious that Mincey had not been involved in any exchange with the staff member at the front desk, Vardman inexplicably came up to Mincey and demanded that she leave the hospital.

29. Mincey and Sonnier were confused by this request because they had been minding their business, sitting down, and not doing anything improper.

30. Mincey and Sonnier quickly realized Vardman would not listen, so Mincey left the hospital as instructed, with Sonnier accompanying her.

31. Vardman allowed Mincey to leave the hospital consistent with his instructions.

32. Then, in the course of leaving, Mincey called Vardman a racist, saying "this is some racist mess," or words to that effect.

33. In immediate response to Mincey's comment, Vardman arrested her.

34. In response to what she perceived to be her mother's unlawful arrest, Sonnier criticized Varman's performance of his official job duties.

35. In retaliation for this protected speech, Vardman arrested Sonnier, too.

36. Vardman charged Mincey with obstruction in violation of O.C.G.A. § 16-10-24, disorderly conduct in violation of O.C.G.A. § 16-11-39, reckless conduct in violation of O.C.G.A. § 16-5-60, and criminal trespass in violation of O.C.G.A. § 16-7-21.

37. Vardman charged Sonnier with obstruction in violation of O.C.G.A. § 16-10-24 and reckless conduct in violation of O.C.G.A. § 16-5-60.

38. There was no probable cause for any of these charges.

39. Vardman's theory for obstruction was that Mincey and Sonnier resisted arrest and/or were violent towards him.

40. Vardman also stated that Mincey struck him.

41. Neither Mincey not Sonnier was violent towards Vardman, and each allowed themselves to be arrested despite the unlawfulness of the arrest.

42. Mincey did not strike Vardman.

43. Under Georgia law, persons are entitled to resist an unlawful arrest and there was no arguable probable cause for any offense.

44. Vardman's theory for reckless conduct was that Mincey and Sonnier held small children in their arms while being arrested.

45. In fact, once Mincey and Sonnier were able to secure a safe person to take the children, they handed their children to others so they could be cared for and to facilitate Vardman's unlawful arrest without risking further violence from Vardman.

46. Further, at the time of their seizure, there was no arguable probable cause for any offense, including any charge of reckless conduct.

47. Mincey and Sonnier did not engage in any conduct, reckless or otherwise, that put the children they held at risk.

48. Vardman's theory for disorderly conduct was that Mincey cursed inside the hospital in the innocuous exchange with the front desk personnel in the Emergency Department waiting area.

49. Vardman had no reason to believe that Mincey was involved in the innocuous exchange.

50. The innocuous exchange did not involve profanity.

51. Vardman had previously spoken with the man involved in that innocuous exchange who was clearly not Mincey.

52. Vardman's theory for criminal trespass was that Mincey refused to leave the Emergency Department waiting area.

53. In fact, Mincey agreed to leave the Emergency Department waiting area, even though there was no basis to order her to leave.

54. Based on Vardman's fabrications, Mincey and Sonnier were criminally prosecuted.

55. At trial, a jury acquitted Mincey and Sonnier of all charges.

## COUNT I
### *Illegal Seizure*
### *under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments*

56. Plaintiffs were originally subjected to a warrantless arrest, despite evidence that demonstrated Plaintiffs' innocence and compliance with Vardman's instruction to leave the hospital.

57. By causing Plaintiffs to be handcuffed and transported him to jail, Defendant Vardman arrested Plaintiffs.

58. At the time of the arrest, no reasonable police officer could have believed that there was probable cause to believe Plaintiffs committed any criminal offense.

59. Plaintiffs were later detained pursuant to legal process via warrants and/or accusations and summonses that started the prosecution against them.

60. Defendant Vardman provided intentionally or recklessly false information in support of Plaintiffs' detention.

61. Defendant Vardman failed to provide material exculpatory information known to them which showed Plaintiff was compliant with his probation supervision.

62. Excluding the intentionally or recklessly false information provided by Defendant, there was nothing approaching probable cause for Plaintiffs' arrest.

63. Including Defendant Vardman's material omissions, there was nothing approaching probable cause for Plaintiffs' arrests.

64. Defendant Vardman knew that his false and reckless statements would result in Plaintiffs' arrest and incarceration.

65. Defendants' actions were the proximate cause of Plaintiffs' arrest and detention.

66. Prior to their arrests, Plaintiffs had not committed any offense that would authorize their arrest.

67. Defendant Vardman did not know any information that could support a reasonable belief that probable cause existed to arrest Plaintiffs for any offense.

68. Defendant Vardman knowingly and willfully acted in the complete absence of probable cause and with malice in causing Plaintiffs to be arrested and prosecuted.

69. Plaintiffs' seizure and prosecution terminated in a manner not inconsistent with their innocence when a jury acquitted them of all charges.

70. Plaintiffs suffered damages as a result, including emotional losses and the loss of liberty.

71. Under the facts and circumstances alleged herein, objectively reasonable law enforcement officers would have known that causing a citizen to be arrested under these circumstances violated the Fourth and Fourteenth Amendments of the United States Constitution.

## COUNT II
### *False Imprisonment, False Arrest, and/or Malicious Prosecution*
### *under state law*

72. Defendant Vardman arrested Plaintiffs without any justification whatsoever.

73. When he arrested Plaintiffs, Vardman knew for a fact that they had not committed any offense, but he arrested them anyway because he wanted to punish them for their free speech.

74. When Vardman first arrested Plaintiffs, he did so without any legal process.

75. Vardman then initiated legal process against Plaintiffs on the basis of his false statements about what Plaintiffs did and did not do.

76. That legal process terminated in Plaintiffs' favor when all Plaintiffs were acquitted on all charges after a trial by jury.

## COUNT III
### *Respondeat Superior / Vicarious Liability*
### *Against Piedmont*

77. At all times relevant to this complaint, Vardman acted within the scope and authority of his employment for Piedmont.

78. At all times relevant to this complaint, Vardman acted in furtherance of Piedmont's interests by acting as a security guard.

79. Piedmont controlled the time of Vardman's performance of his duties, meaning that they controlled the hours he worked—he was not free to work whenever he wanted.

80. Piedmont controlled the place of Vardman's performance of his duties, meaning that he was provided a desk in the Emergency Department waiting area where he was instructed to be based.

81. Piedmont controlled the manner of Vardman's performance of his duties, meaning that he was provided instructions and guidelines about how to perform his role as a security guard for Piedmont.

82. Piedmont is liable for the torts of its employee Vardman.

## COUNT IV
*Punitive Damages*

83. Defendants acted with conscious indifference or reckless disregard for the consequences of their actions, such that an award of punitive damages is authorized under state and federal law.

## COUNT V
*Attorneys' Fees*

84. Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiffs unnecessary trouble and expense through the events giving rise to this action as well as in Defendants' course of conduct in this litigation.

85. Plaintiffs request reasonable attorneys' fees and expenses associated with this litigation, and such fees and expenses are appropriate under O.C.G.A. § 13-6-11.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs requests this Court:

a) Hold a trial by jury on all issues so triable;

b) Award nominal, compensatory, special, and punitive damages to Plaintiff against Defendants in an amount to be proven at trial;

c) Award Plaintiff attorneys' fees under 42 U.S.C. § 1988 and state law;

d) Tax all costs of this action against Defendants; and

e) Award any additional or alternative legal or equitable relief that is just and appropriate.

Respectfully submitted, this 2nd day of July, 2021.

*/s/Zack Greenamyre*
Zack Greenamyre
Georgia Bar No. 293002
Samantha Funt
Georgia Bar No. 943783

MITCHELL & SHAPIRO LLP
3490 Piedmont Road, Suite 650
Atlanta, Georgia 30305
Phone: 404-812-4747
Fax: 404-812-4740 zack@mitchellshapiro.com
sam@mitchellshapiro.com