IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| CAROLYN MINCEY and QUENTINA SONNIER,<br><br>     Plaintiffs,<br><br>vs.<br><br>RYAN VARDMAN, individually, PIEDMONT HEALTHCARE, INC., and HUGHSTON HOSPITAL, INC. d/b/a PIEDMONT COLUMBUS NORTHSIDE HOSPITAL.<br><br>     Defendants. | *<br>*<br>*<br>*<br>*  CASE NO. 4:21-CV-110 (CDL)<br>*<br>*<br>*<br>* |

O R D E R

Carolyn Mincey and Quentina Sonnier were arrested by off-duty police officer Ryan Vardman while they were visitors at a local hospital. They have sued Vardman and the hospital, claiming that they were "falsely arrested" and thus their rights under the Fourth Amendment to the United States Constitution were violated. Because Vardman had probable cause to arrest them, Defendants' motions for summary judgment as to Plaintiffs' federal law claims (ECF Nos. 44 & 59) are granted. The Court declines to exercise supplemental jurisdiction over the remaining state law claims, which are dismissed without prejudice.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiffs, the record reveals the following facts.

### I. Vardman's Assignment to the Hospital

The hospital Defendants arranged for the Columbus Police Department ("CPD") to provide off-duty police officers within the hospital's emergency room ("ER").  These officers wore their standard-issue CPD uniforms and badges while working off-duty. Vardman was restricted to enforcing Georgia law and prohibited from enforcing hospital policies.  Because the Court resolves the pending motions based on a finding of probable cause supporting the arrests, it is not necessary to address the issue of whether Vardman was acting as an agent of the hospital at the time of the arrests.

## II.  Plaintiffs' Arrests

### A.  Vardman's First Encounter with Plaintiffs

On July 7, 2019, Plaintiffs, each holding a ten-month old child, sat with family members in the ER to visit relatives receiving treatment at the hospital.  Vardman, while wearing his police badge and uniform, sat beside the hospital's patient access representative, Katharina Spurlock, at the ER waiting area's front desk.  Spurlock controlled access to ER rooms from the waiting area and, on the day in question, she had a dispute with a member of the Plaintiffs' group about who could access the patient area.  After that dispute, another member of the group, Keonte Alexander, told the group that Spurlock "had a nasty attitude," Mincey Dep. 90:20-91:5, ECF No. 51, and that "if she didn't like her job she could find another one."  K. Alexander Dep. 110:5-6, ECF No. 54.  According to Vardman, as the group discussed Spurlock, they "became upset" and the environment "started to get very tense."  Vardman Dep. 61:9-61:18, ECF No. 48.  Vardman overheard their discussion and approached them.  He asked the group who made the comments about Spurlock and, after a few moments, Alexander acknowledged that he did.

After Alexander acknowledged making the comments, Mincey, who Vardman perceived as upset during this encounter, asked Vardman to "leave [them] alone."  Mincey Dep. at 93:2-5.  Mincey and Vardman then argued about her behavior and Spurlock's enforcement of

3

hospital policies. Vardman told the group that, if they were not quiet, they would have to leave.

### B. Vardman's Second Encounter with Plaintiffs

Vardman then returned to the front desk. Subsequently, he again reminded the group that he would have to ask them to leave if they did not sit quietly. In response, Mincey gave Vardman a dismissive hand gesture. Vardman then directed her to leave the hospital, advising her that, if she refused, she was "going to go to jail." Composite Video at 3:13-3:16, ECF No. 61 (on file with the Court). As Mincey departed, she called Vardman a "racist ass motherfucker." *Id.* at 3:17–3:19. Vardman then informed her that she was "under arrest." *Id.* at 3:15-3:20; Mincey Dep. at 71:23-24. In order to effectuate the arrest, Vardman ordered Mincey to give the child she held to someone else, but Mincey refused.

While still holding the child, Mincey physically resisted Vardman's efforts to arrest her, pushing him as she attempted to leave. Composite Video at 4:17-4:22. Her resistance caused Vardman to suffer a cut to the head. Sonnier, who was also holding a child at the time, placed herself between Vardman and Mincey; she disobeyed Vardman's order to "get out of the way" and made it more difficult for Vardman to arrest Mincey. Sonnier Dep. 95:19-21, 101:24-102:3, ECF No. 52. Sonnier also pushed Vardman as he attempted to separate her from Mincey. Composite Video at 4:44-4:47. Throughout their struggle, Vardman directed Plaintiffs to

4

stop using the children to interfere with their arrests. Once Plaintiffs finally released the children, Vardman arrested Plaintiffs.

**III. Subsequent Legal Actions**

Mincey was charged with misdemeanor disorderly conduct in violation of O.C.G.A. § 16-11-39, misdemeanor criminal trespass in violation of O.C.G.A. § 16-7-21, misdemeanor reckless conduct in violation of O.C.G.A. § 16-5-60, and felony obstruction of an officer in violation of O.C.G.A. § 16-10-24(b). Sonnier was charged with misdemeanor reckless conduct and felony obstruction of an officer. Plaintiffs were subsequently acquitted on all charges.

Plaintiffs filed the present action asserting (1) false arrest claims against Vardman under 42 U.S.C. § 1983 for violating the Fourth Amendment and (2) Georgia false imprisonment claims against Vardman and the hospital Defendants. Defendants move for summary judgment on all claims.

## DISCUSSION

As explained in the remainder of this order, Vardman had probable cause to arrest both Plaintiffs. Accordingly, their federal Fourth Amendment claims fail. The Court declines to exercise supplemental jurisdiction over the remaining state law claims, which are dismissed without prejudice, and no discussion of the substance of those state law claims is necessary.

I.  **Plaintiffs' Federal Fourth Amendment Claims**

Vardman argues that he is entitled to qualified immunity on Plaintiffs' federal Fourth Amendment claims because he was acting under color of law and within his discretionary authority. *See Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (explaining the qualified immunity standard). Typically, as part of the qualified immunity inquiry, the Court would address first whether Vardman's conduct amounted to a violation of the Fourth Amendment that was clearly established. *Id.* This analysis would encompass a discussion of what was clearly established and whether Vardman's conduct crossed the line. But the Court may also start its analysis with the question of whether a constitutional violation even occurred. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). And that is where the Court's analysis in this case begins and ends.

To avoid summary judgment on their Fourth Amendment claims, Plaintiffs must point to evidence from which a reasonable jury could conclude that Vardman did not have probable cause to arrest Plaintiffs for at least one of the offenses for which they were charged. *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022) (Fourth Amendment false arrest claim). The applicable probable cause standard requires an assessment of whether a reasonable officer under the totality of the circumstances "could conclude that there was a substantial chance of criminal activity."

6

*Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (alterations adopted) (internal quotation marks omitted) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018)). Moreover, "so long as probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred," the arrest does not violate the Fourth Amendment. *Brienza v. City of Peachtree City*, No. 21-12290, 2022 WL 3841095, at *7 (11th Cir. Aug. 30, 2022) (per curiam) (quoting *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020)). Because Vardman had probable cause to arrest Mincey for disorderly conduct, reckless conduct and felony obstruction and to arrest Sonnier for reckless conduct and felony obstruction, he did not violate their Fourth Amendment rights.

A.  Mincey's Arrest for Disorderly Conduct

Vardman arrested Mincey for disorderly conduct in violation of O.C.G.A. § 16-11-39. A person commits disorderly conduct when she "[w]ithout provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace," meaning "words which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment" or "[w]ithout provocation, uses obscene and vulgar or profane language in the presence of . . . a person under

7

the age of 14 years which threatens an immediate breach of the peace." O.C.G.A. § 16-11-39(a)(3)-(4).

Although offensive speech directed at law enforcement officers rises to disorderly conduct in more narrow circumstances, *Knowles v. State*, 797 S.E.2d 197, 201 (Ga. Ct. App. 2017), the totality of the circumstances here nonetheless supported probable cause to arrest Mincey for that offense. *Tucker v. State*, 504 S.E.2d 250, 253 (Ga. Ct. App. 1998) (directing courts to assess the circumstances surrounding words to determine whether a person commits disorderly conduct). Following a tense encounter with Plaintiffs' group and several reminders to keep quiet, Mincey used a dismissive hand gesture towards Vardman, which standing alone likely would not amount to disorderly conduct. But then after Vardman directed Mincey to leave the hospital, Mincey—while holding a child under the age of 14—called Vardman a "racist ass motherfucker." Composite Video at 3:17-3:19. Mincey acknowledged that her conduct-which included refusing to obey Vardman's orders, using a dismissive hand gesture, and using inappropriate language in the presence of the child-"was unjustifiable." Mincey Dep. at 194:17-24. Mincey's actions provided probable cause for Vardman to arrest Mincey for disorderly conduct. *See, e.g.*, *Steillman v. State*, 673 S.E.2d 286, 288 (Ga. Ct. App. 2009) (affirming the trial court's conclusion that the officer possessed probable cause to arrest the defendant for disorderly conduct under O.C.G.A. § 16-

8

11-39 when the defendant called the officer a "racist motherf____r" among other inappropriate language and refused to obey the officer's orders); *Johnson v. State*, 566 S.E.2d 349, 350 (Ga. Ct. App. 2002) (affirming the jury's determination that a defendant "yelling 'f--- the police' within hearing distance of numerous small children" committed disorderly conduct under O.C.G.A. § 16-11-39).

### B. Mincey's and Sonnier's Arrests for Reckless Conduct and Felony Obstruction

Vardman charged Mincey and Sonnier with reckless conduct under O.C.G.A. § 16-5-60 and felony obstruction of an officer under O.C.G.A. § 16-10-24(b).  As to the reckless conduct charges, "[a] person who . . . endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that" her actions "will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor."  O.C.G.A. § 16-5-60(b).  Regarding the obstruction charges, "[w]hoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his or her official duties by offering or doing violence to the person of such officer or legally authorized person shall be guilty of a felony."  O.C.G.A. § 16-10-24(b).

As previously explained, Vardman possessed probable cause to arrest Mincey for disorderly conduct. Then, while holding a child, Mincey forcefully resisted her arrest, and Sonnier, while also holding a child, physically interfered with Mincey's arrest. Plaintiffs refused Vardman's multiple commands to release the children that they held. By holding the children during their physical resistance against Vardman and interference with a lawful arrest, Plaintiffs put the children in harm's way. Under these circumstances, Vardman possessed probable cause to arrest them for both reckless conduct and felony obstruction. *See, e.g.*, *McCauley v. State*, 475 S.E.2d 669, 670 (Ga. Ct. App. 1996) (affirming the jury's determination that officer did not illegally arrest the defendant for reckless conduct "predicated on defendant's endangerment of the infant by striking the deputies while holding the child"); *Harris v. State*, 622 S.E.2d 905, 907 (Ga. Ct. App. 2005) (determining that, when a defendant "struck and pushed" the arresting officer, the defendant "committed the crime[] of felony obstruction" under O.C.G.A. § 16-10-24(b)).[1]

Because Vardman had actual probable cause to arrest Plaintiffs for at least one charged offense, the Court finds it unnecessary to address whether the trespass charge against Mincey

---

[1] Plaintiffs argue that Georgia law entitled them to use proportional force to resist an unlawful arrest, but that argument fails because Vardman lawfully arrested them. *Glenn v. State*, 849 S.E.2d 409, 418 (Ga. 2020) ("When an arrest is lawful, of course, the right to resist an unlawful arrest is not pertinent.").

10

was supported by probable cause. Having found that Vardman had probable cause to arrest Plaintiffs on at least one of the charges made against them, the Court further finds that Plaintiffs' Fourth Amendment claims arising from their arrests fail.

## II. Plaintiffs' State Law Claims

Summary judgment in favor of Defendants on Plaintiffs' Fourth Amendment claims resolves all of the federal claims asserted in this action. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims against the Defendants. Therefore, those claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment (ECF Nos. 44 & 59) as to Plaintiffs' federal claims and dismisses Plaintiffs' state law claims without prejudice.

IT IS SO ORDERED, this 27th day of March, 2023.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA